# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JOHN DOE, as Next Friend of JAMES DOE, )
on behalf of himself and 77 other similarly )
situated individual minors, )
                            )
        Plaintiffs, )
                            )
    v. )           Case No. 4:16-CV-546 JAR
                            )
MATTHEW M. HANSEN, et al., )
                            )
        Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on District Defendants' Motion for Summary Judgment (Doc. No. 111) and Plaintiffs' Renewed Motion for Default Judgment and Statutory Damages Under Count I of the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment Under Count I of the Second Amended Complaint (Doc. No. 114). The motions are fully briefed and ready for disposition. For the following reasons, the District Defendants' motion will be granted and Plaintiffs' motion will be denied.

### I.    Background

On April 22, 2016, Plaintiff filed this action against the Fort Zumwalt R-II School District (the "District") and Matthew M. Hansen ("Hansen"), a former District teacher, in his individual and official capacities, on behalf of a putative class of current and former students who were unknowingly videotaped in the nude by Hansen while attending a summer camp sponsored and supervised by the District between 2007 and 2011. Plaintiff asserted claims under

the Child Abuse Victims Rights Act of 1986, 18 U.S.C. § 2255 ("CAVRA")[1] and 42 U.S.C. § 1983, as well as state law claims for invasion of privacy and negligent supervision (Doc. No. 1). The District filed its Answer on May 17, 2016. As to Count I, alleging violations of CAVRA and directed against Hansen only, the District denied each allegation "in the event that Plaintiff may seek to attribute such allegations . . . to District Defendant under a theory of *respondeat superior* or any other theory of law." (Doc. No. 9 at ¶¶ 26-32).

On May 31, 2016, this Court entered an Order and Judgment of Default against Hansen as to liability only. (Doc. No. 17)

On August 5, 2016, Plaintiff filed his First Amended Complaint, again asserting claims against the District and Hansen in his individual and official capacities (Doc. No. 26). On August 19, 2016, the District filed its Answer to the First Amended Complaint, denying each allegation of Count I, directed against Hansen only, "in the event that Plaintiff may seek to attribute such allegations . . . to District Defendant under a theory of *respondeat superior* or any other theory of law." (Doc. No. 32 at ¶¶ 26-32).

On October 14, 2016, Plaintiff filed a Second Amended Complaint, which is the operative complaint, naming Hansen in his individual and official capacities, as well as seven current and former employees of the District[2] ("District Defendants") and a number of unknown

---

[1] Under CAVRA, any minor who is a victim of various sections of Title 18 prohibiting sexual exploitation of children and suffered personal injury as a result may bring a civil action in an appropriate district court to recover statutory damages of no less than $150,000. 18 U.S.C. § 2255. Section 2255 applies to violations of 18 U.S.C. § 2251, the offense of conviction in Hansen's case, which makes it unlawful to produce and possess child pornography.

[2] The District Defendants are Superintendent Bernard DuBray; Assistant Superintendent Mike Clemens (deceased); Assistant Superintendent Patty Corum; Assistant Superintendent Jackie Floyd; Greg Solomon, Outdoor Education Curriculum Coordinator for the District's Cuivre River Camp; Nelda Wetzel, principal of Lewis & Clark Elementary School within the District; Jill Hutchenson, principal of Dardenne Elementary School within the District; and Dan Hadfield, 5th grade teacher from Progress South Elementary School within the District and Camp Coordinator.

John and Jane Doe Defendants employed as principals in charge of supervision at the camp, in their official capacities only. Notably, the District was not named as a defendant. (Doc. No. 46) Counts I (42 U.S.C. § 1983 - Violation of the Child Abuse Victims' Rights Act) and II (42 U.S.C. § 1983 – Violation of Right of Privacy) of the Second Amended Complaint are directed against Hansen only; Counts III, V, and VII (42 U.S.C. § 1983 – Violation of Fourteenth Amendment – Substantive Due Process, Failure to Supervise and Train) are directed against District officials (administrators, principals, and 5th grade teachers) for failure to supervise the showers at the camp and failure to train staff that no student was to leave the shower area for dressing or undressing.[3]

The District Defendants filed their answer to the Second Amended Complaint on October 28, 2016, denying each allegation of Count I, directed against Hansen only, "in the event that Plaintiff may seek to attribute such allegations . . . to District Defendants under a theory of *respondeat superior* or any other theory of law." (Doc. No. 56 at ¶¶ 46-52).

On November 15, 2016, on Plaintiff's unopposed motion, this Court certified the class[4] as to Counts I and II of the Second Amended Complaint for the purpose of determining liability only. (Doc. No. 67) That same day, Plaintiffs dismissed with prejudice their claims against Hansen in his individual capacity only in Counts I and II. (Doc. No. 68) Plaintiffs then moved to enforce against the District the default judgment entered against Hansen under Count I for statutory damages of $150,000.00 for each plaintiff under CAVRA, 18 U.S.C. § 2255(a), for a class judgment of $11,700,000.00, exclusive of costs and attorney's fees. The Court denied

---

[3] On March 2, 2018, Plaintiffs voluntarily dismissed with prejudice their state law negligence claims (Counts IV, VI and VIII) because Defendants have not waived sovereign immunity. (Doc. No. 122)

[4] The class is defined as "the seventy-eight (78) current and former students of the Fort Zumwalt R-II School District who attended the School District's summer camp at Cuivre River State Park between 2007 and 2011, and who allegedly were unknowingly videotaped in the nude by Defendant Matthew Hansen."

Plaintiffs' motion, clarifying that its Order and Judgment of Default was against Hansen in his individual capacity only and not enforceable against the District and the District Defendants. (Doc. No. 98)

On January 31, 2018, the District Defendants moved for summary judgment on the grounds that a governmental entity such as a public school district cannot be held vicariously liable for its agent's acts under § 1983. Moreover, Plaintiffs cannot identify a governmental policy or custom that caused their alleged injuries or establish deliberate indifference by the District or conduct that "shocks the conscience." Lastly, District Defendants assert that Plaintiffs' claims in Count I fail because statutory liability under CAVRA is limited to claims against the actual abuser, not secondary entities such as the District.

Plaintiffs have renewed their motion for default judgment against Hansen in his official capacity. Alternatively, Plaintiffs move for summary judgment on Count I on the grounds that Hansen's liability under 18 U.S.C. § 2251 entitles them to judgment against the District on their CAVRA claim.

## II.    Legal standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. "The basic inquiry is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the movant does so, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether summary judgment is appropriate in a particular case, the Court reviews the facts in a light most favorable to the party opposing the motion and gives that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). In considering a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).

## III. Facts[5]

The District is a Missouri public school district, organized and existing pursuant to Missouri law. Hansen was employed as a teacher at the District, and a camp counselor at the District's Outdoor Education Camp for fifth-grade students held at Cuivre River State Park, Missouri, from 2004 to 2012 ("the Camp"). The Camp is, and has been, exclusively staffed by District employees for the past thirty-five (35) years. It was the District's practice to assign one

---

[5] The facts are taken from the District Defendants' Statement of Uncontroverted Material Facts, Doc. No. 113; Plaintiff's Statement of Uncontroverted Facts, Doc. No. 120; Plaintiffs' Statement of Additional Uncontroverted Material Facts, Doc. No. 123; and the parties' responses thereto.

adult District teacher to each student cabin. An older student "camp counselor," typically a high school A+ student, was also assigned to each cabin.[6] Camp counselors were relied upon to assist the teacher and report any improper behavior, should any occur. Hansen attended the Camp as a teacher for the District during the relevant years of 2007 through 2011, as well as other years.

In 2013, Hansen pled guilty to child pornography related charges involving the video recording of minor students (fifth graders) while they attended the Camp during the periods 2007 through 2011. Hansen admitted using a hidden camera to video record students in the nude inside the cabins and did so without the knowledge of anyone from the District. The total number of victims is seventy-eight (78).

The District had a number of policies in place from 2007 to 2011 that prohibited Hansen's conduct.[7] Specifically, the District's Audio and Visual Recording Policy KKB, adopted on June 30, 2008, stated that "[n]o recording equipment will be used or placed in areas of the building where the occupant would have a reasonable expectation of privacy, such as restroom facilities or locker rooms."

The District's Staff Ethics Policy GBC, in effect since 1990, required Hansen, among other things, to "become familiar with, enforce and follow Board policies, regulations, and administrative procedures, other directions given by district administrators and state and federal laws as they affect the performance of job duties;" "maintain courteous and professional relationships with pupils . . . "; and further provides that "no employee may use his or her status as an employee to adversely influence a student of the district."

_____

[6] The District denies that the student camp counselors "work" for the District. (Doc. No. 127 at ¶ 13)

[7] Plaintiffs do not dispute that these policies were in existence; rather, Plaintiffs assert that the District Defendants knew that pedophiles would not follow these policies, nor would they complete a job application with the District disclosing that they were a pedophile. (Doc. No. 123 ¶¶ 11-13)

6

Since June 21, 2010, the District has had in place a Staff/Student Relations Policy GBH, which requires, among other things, that "staff members are expected to maintain courteous and professional relationships with students" and are prohibited from "engaging in any conduct that violates Board policies, regulations or procedures [or] constitutes criminal behavior."

The District also conducts criminal background checks on its employees and conducted a criminal background check on Hansen.

It is undisputed that the District first learned about Hansen's illegal video recording after he was arrested in June 2012 and District officials were contacted by the police; however, Plaintiffs dispute that the District had no prior notice of Hansen's actions. The only evidence Plaintiffs present is by stipulation of the parties that in 2006, David Ring, a sixteen (16) year old A+ student "camp counselor," walked into the cabin to which Hansen was assigned and observed him on the top bunk of one of the double bunk beds. Hansen acted startled and jumped out of the top bunk. There was a fifth-grade boy in the top bunk. (Doc. No. 123-1) Ring did not report what he had seen to District officials until after Hansen's arrest in 2012.

## IV. Discussion

### A. Plaintiffs' Renewed Motion for Default Judgment

Plaintiffs have renewed their motion for default judgment against the District on Count I on the grounds that no entry of appearance or responsive pleadings have been filed on behalf of Hansen in either his individual or official capacity. This Court previously ruled that the default judgment in this matter only applied to Hansen in his individual capacity, and that the District had fully responded to the official capacity claims against Hansen and thus is not in default with respect to those claims. Plaintiffs raise no new argument and present no new legal reason that

would cause this Court to reconsider its previous Order in this matter. Accordingly, the renewed motion for default judgment will be denied.

## B. Cross motions for summary judgment on Count I – Violation of the Child Abuse Victims' Rights Act (CAVRA)

Both Plaintiffs and the District Defendants have moved for summary judgment on Count I, Plaintiffs' § 1983 claim against the District[8] under 18 U.S.C. § 2255, the civil remedies provision of CAVRA. In order to be subject to liability under § 2255, a defendant must be proven to have violated at least one of the criminal statutes listed in § 2255 by a preponderance of the evidence. Doe v. Liberatore, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (citing Smith v. Husband, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005)). Under CAVRA, any victim "shall be deemed to have sustained damages of no less than $150,000 in value." 18 U.S.C. § 2255(a); Doe v. Boland, 698 F.3d 877, 882 (6th Cir. 2012); see also Doe v. Royal Caribbean Cruises, Ltd., 860 F. Supp. 2d 1337, 1343–44 (S.D. Fla. 2012) (explaining that § 2255 imposes strict liability upon those meeting its prerequisites).

Plaintiffs argue that Hansen's underlying criminal convictions in Case No. 4:13-CR-00026 JCH entitle them to judgment against the District for statutory damages on behalf of each class member under § 1983. The District argues that § 2255 is limited to claims against the actual abuser, and does not provide for secondary or vicarious liability for entities like employers.

CAVRA provides only that a minor victim of enumerated sex offenses "may sue in any appropriate" district court, § 2255(a); the Act does not specify against whom that lawsuit may be brought. Neither the United States Supreme Court nor the Eighth Circuit have addressed the scope of liability under § 2255. At least one court has held that § 2255 does not provide for

---

[8] Because Count I is directed against Hansen in his official capacity, it is in actuality against the District. See Burlison v. Springfield Public Schools, 708 F.3d 1034, 1038 (8th Cir. 2013) (claims against school officials in their official capacities are in reality claims against the school district).

8

secondary liability. In Jean-Charles v. Perlitz, 937 F. Supp. 2d 276 (D. Conn. 2013), plaintiffs alleged they were sexually abused while they were minors attending a residential school for economically disadvantaged children in Haiti and sued the chairman of the board of the organization that operated the school, and another board member, under § 2255. Id. at 279. The defendants moved to dismiss plaintiff's claims on the grounds that § 2255 does not provide for secondary liability. Id. at 281. In response, the plaintiffs argued that § 2255 implicitly provides a cause of action against individuals who could be punished either as aiders and abettors, or as accessories after the fact, under 18 U.S.C. § 2 and § 3, respectively. Id. The Perlitz court found that under Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 191 (1994)[9], which makes the text of a federal statute dispositive in determining whether it provides for secondary liability, the lack of any reference to secondary liability in § 2255 was fatal to the plaintiffs' position and dismissed their claims. Id. at 281-82.

The Court is aware that other district courts have read secondary liability into § 2255, but notes they have done so without extended discussion. See Liberatore, 478 F. Supp. 2d 742; Doe v. Schneider, No. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013); and M.A. v. Village Voice Media Holdings, Inc., 809 F. Supp. 2d 1041 (E.D. Mo. 2011). In any event, under the specific facts and circumstances of these cases, the courts held CAVRA inapplicable to the entity that did not actually commit the offense, even when the allegation was that the entity acted as an "aider and abettor." In Liberatore, 478 F. Supp. 2d 742, for example, the court granted summary judgment in favor of the defendants because there was no evidence "remotely suggesting" they

---

[9] The Supreme Court in Central Bank held that section 10(b) of the Securities and Exchange Act of 1934, which prohibits securities fraud, does not reach aiding and abetting because it makes no reference to secondary liability, the liability that statutes such as 18 U.S.C. §§ 2 and 3 create in criminal cases. The Court discussed the securities laws at length, but nothing in its holding turns on particular features of those laws.

shared the abuser's specific intent to commit the sexual offenses or actively participated in some manner to assist the abuser in the commission of his offenses. Id. at 756-57. In Schneider, 2013 WL 5429229, the court instructed that to establish aiding and abetting pursuant to 18 U.S.C. § 2 for purposes of liability under CAVRA, the plaintiff must demonstrate that: "(1) the substantive offense has been committed; (2) the defendant knew the offense was being committed; and (3) the defendant acted with the intent to facilitate it." Id. at *10 (internal quotation omitted). The Schneider court granted summary judgment in favor of the defendants because no evidence was presented to suggest they had provided any assistance to the abuser in carrying out the alleged abuse, or that they had "the same state of mind as required for the principal offense," i.e., the intent for the abuser to engage in criminal sexual activity with the plaintiff. Id. In the instant case, there is no allegation or evidence that the District acted as an aider and abettor.

After careful consideration, the Court agrees with the conclusion reached by the Perlitz court, following the logic of Central Bank, that the civil remedy provision of CAVRA does not permit claims for secondary or vicarious liability. The points made in Central Bank in support of this conclusion, as relevant to the instant case, are as follows:

1. The statute's text is the touchstone in determining whether a statute provides for secondary liability;

2. If the statute is silent, then there can be no liability for aiding and abetting since Congress knows how to provide for aiding and abetting liability if it wants to do so;

3. Policy considerations are irrelevant in determining whether a statute provides for secondary liability; and

4. There is no general presumption that federal civil statutes provide for aiding and abetting liability.

Gill v. Arab Bank, PLC, 893 F. Supp. 2d 474, 499 (E.D.N.Y. 2012) (citing Note, Central Bank and Intellectual Property, 123 Harv. L. Rev. 730, 732–34 (2010)). As the Perlitz court stated,

Central Bank's holding is not based on any particular feature of the securities laws. Perlitz, 937 F. Supp. 2d at 281. It is the Supreme Court's approach to interpreting the statute, and not the actual statute itself, that matters. Id. (citing Freeman v. DirecTV, Inc., 457 F.3d 1001, 1006 n. 1 (9th Cir. 2006)). Absent secondary liability, § 2255 cannot serve as a predicate statutory violation for Plaintiffs' § 1983 claim.

Moreover, there is no respondeat superior or vicarious liability under § 1983. A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue, through an official policy or unofficial custom, as discussed below. See City of Canton v. Harris, 489 U.S. 378, 385 (1989); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001). Since neither § 1983 nor § 2255 allow for vicarious or "secondary" liability, Count I fails as a matter of law. Accordingly, the Court will grant summary judgment on Count I in favor of the District and against Plaintiffs.

**C. Defendants' Motion for Summary Judgment**

In Count II, Plaintiffs allege that Hansen intentionally violated their constitutional right of privacy by videotaping them naked after showering at the Camp. In Counts III, V, and VII, Plaintiffs allege that their constitutionally protected liberty rights under the Due Process Clause of the Fourteenth Amendment were violated as a result of the District Defendants' failure to supervise and train their staff and students. Again, because these claims are directed against Defendants in their official capacities only, they are in actuality claims against the District and will be referred to as such. Burlison, 708 F.3d at 1038.

The conduct at the core of this lawsuit is intentional tortious conduct by a District employee. In a § 1983 action, a local government – which for these purposes includes the District – cannot be held liable on a theory of *respondeat superior*, that is, solely because it

employs a tortfeasor. Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 389 (8th Cir. 2007) (citing Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978)). A local government is responsible only for its own illegal acts. Thus, to establish that the District is liable for Hansen's actions, Plaintiffs must present sufficient evidence to establish that his actions resulted from an official policy or custom. See Monell, 436 U.S. at 690–91; City of Canton, 489 U.S. at 388–89; Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013); see also Connick v. Thompson, 563 U.S. 51, 60 (2011). The Eighth Circuit has defined policy as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters," Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999), and custom as "a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law," Russell v. Hennepin County, 420 F.3d 841, 849 (8th Cir. 2005). "To establish a constitutional violation resulting from such a custom, a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." Id.

Likewise, municipal liability for failure to train or supervise "requires proof that the failure amounts to deliberate indifference to the rights of persons with whom the employee comes into contact," and that the "municipal inaction [is] the moving force behind the constitutional violation." S.M. v. Lincoln Cty., 874 F.3d 581, 585 (8th Cir. 2017). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id.

**Arguments of the parties**

In support of its motion for summary judgment, the District first argues that Plaintiffs have not established a District policy or custom that caused their alleged injuries. (Doc. No. 112 at 4) The District refers to its official policy concerning audio and visual recording, known as Policy KKB, which provides that "[n]o recording equipment will be used or placed in areas of the building where the occupant would have a reasonable expectation of privacy, such as restroom facilities or locker rooms." Policy KKB explicitly prohibited Hansen's conduct. As for its custom and practice of assigning a single adult to student cabins, the District notes the lack of evidence of similar conduct by any other teacher or District employee in the Camp's thirty-year history establishing that the "single-adult" policy caused their injuries as a matter of law. Secondly, the District argues that Plaintiffs have not shown the District's alleged failure to supervise the showers at the Camp or train staff that no student was to leave the shower area for dressing or undressing demonstrated a deliberate indifference to Plaintiffs' constitutional rights or "shocks the conscience." (Doc. No. 112 at 5-7) Absent evidence the District had notice that its procedures were inadequate and likely to result in a constitutional violation, see Jennings v. Wentzville R-IV School Dist., 397 F.3d 1118, 1122 (8th Cir. 2005), Plaintiffs' claims fail.

Citing Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014), Plaintiffs respond that an objective standard of deliberate indifference applies to failure to supervise and train claims against a municipality, such that "liability [may] be premised on obviousness or constructive notice," as opposed to actual notice. See also Lincoln Cnty, 874 F.3d at 585 ("The issue is whether . . . the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [municipality] can reasonably be said to have been deliberately indifferent to the need.") (Doc. No. 125 at 4-8)

Plaintiffs argue that the District was aware the Camp would provide showers to camp attendees, which would necessarily involve nudity, yet had a custom and practice of assigning a single adult to student cabins and providing no supervision during periods of showering and nudity. The situation was then compounded by the District's separate custom and practice of allowing video recording equipment to be brought to the Camp by the teachers, including Hansen, who were staying with the students in the cabins, in contravention of its own policy prohibiting audio and visual recordings on District property or at a District activity in places where there was a reasonable expectation of privacy. According to Plaintiffs, the District's prohibition of video recording equipment under Policy KKB, and the contravention of that policy at the Camp, demonstrates a "patently obvious" need for supervision and training, as does Hansen's conduct over five consecutive years, in the same location, against multiple victims. (Doc. No. 125 at 8)

In addition, Plaintiffs contend the District had both actual and constructive notice that Hansen was a pedophile by virtue of their custom and practice of relying on teenage camp counselors to assist teachers and report any improper behavior. Here, it is undisputed that in 2006 – one year before Hansen started videotaping his victims – a District student camp counselor observed Hansen in a bunk bed with a fifth grade student but took no action until six years later, when he was mature enough to realize what he had seen. (Doc. No. 125 at 9)

Lastly, as further evidence the District failed to appreciate an obvious risk to student safety, Plaintiffs refer to a 2004 U.S. Department of Education report on educator sexual misconduct. (Doc. No. 125 at 9-10; Doc. No. 123-17) Based on existing literature and surveys, the report found that more than 4.5 million students are subject to sexual misconduct by an employee of a school sometime between kindergarten and the 12th grades.

14

The District replies that its official Policy KKB explicitly prohibited Hansen's conduct and that Plaintiffs have presented no facts or evidence that the practice of assigning a single adult to student cabins created a substantial likelihood that an employee would video record students in the nude, particularly given the fact that Hansen used a hidden camera. (Doc. No. 126 at 5) Indeed, there was no evidence that any other District employee engaged in illegal video recording of minor students at the Camp. (Id. at 6)

In further reply, the District argues there is no evidence of either actual or constructive notice that the District's procedures were inadequate and likely to result in a constitutional violation sufficient to establish deliberate indifference. The incident involving Hansen and a student that was observed by a school camp counselor in 2006 is not conclusive proof that Hansen was engaging in any improper conduct and does not serve as notice to the District that Hansen was likely to videotape students in the nude. Moreover, the incident was not reported to the District until after Hansen was arrested in 2012. The District also challenges the relevancy of the Department of Education study to this case on the grounds that it focuses on data extrapolated from 8th grade to 11th grade students as opposed to elementary school students, and does not address the incidence of child pornography committed by teachers as opposed to generalized "sexual misconduct." There is no suggestion that the District was aware of this study prior to the events giving rise to this lawsuit. (Doc. No. 126 at 7-8)

### 1. 42 U.S.C. § 1983 - Violation of right of privacy

To defeat summary judgment on their § 1983 claim for violation of their right of privacy, Plaintiffs must present evidence that (1) there was a "continuing, widespread, persistent pattern of unconstitutional misconduct;" (2) the District was "deliberately indifferent to or tacitly authorized such conduct after gaining knowledge of such conduct"; and (3) Plaintiffs were

15

injured by acts pursuant to the District's custom. Plamp v. Mitchell Sch. Dist. No. 17-2, 565 F.3d 450, 459 (8th Cir. 2009) (citing Thelma D. v. Bd. of Educ., City of St. Louis, 934 F.2d 929, 933–34 (8th Cir. 1991)).

There is no dispute that Hansen engaged in unconstitutional conduct. The parties disagree, however, as to whether Hansen's conduct comprises a persistent and widespread pattern. The District characterizes Hansen's conduct as an isolated incident, while Plaintiffs focus on the fact that his conduct occurred over five consecutive years, in the same location, against multiple victims. Viewing the evidence in the light most favorable to Plaintiffs, it reflects, at most, that one teacher, Hansen, committed acts of sexual misconduct against Plaintiffs by videotaping them in the nude. There is no evidence that other teachers or employees had committed similar acts in the past so as to make it a persistent or widespread problem that was not being addressed. See, e.g., Plamp, 565 F.3d at 459; Atkinson, 709 F.3d at 1216 (other than the single incident at issue, plaintiff submitted no evidence of excessive force by any other city police officer).

Further, Plaintiffs fail to raise an issue of material fact as to whether the District had prior notice of Hansen's actions, let alone a pattern of unconstitutional misconduct generally. Despite Plaintiffs' efforts to impute notice to the District based on a student camp counselor's observation of Hansen with a 5th grade student in 2006, the evidence demonstrates the District was completely unaware that Hansen was illegally video recording students until after he was arrested in 2012 and District officials were contacted by police.[10] In fact, the camp counselor did not report his observation of Hansen to the District until the police began investigating the matter in 2012. There was also no evidence that any other District employee engaged in similar

---

[10] Plaintiffs have not provided any evidence to contravene the affidavit of the District Superintendent denying prior notice of incidents involving Hansen or any other teacher in the past.

16

misconduct at the Camp. Without notice of any prior incidents, the District, as a matter of law, cannot be found to have been deliberately indifferent to Hansen's conduct. See, e.g., Thelma D., 934 F.2d at 929, 934; Jane Doe "A", 901 F.2d at 646.

In Thelma D., elementary school students who were sexually molested by their teacher brought a § 1983 action against, inter alia, the School Board. They alleged that five complaints of sexual abuse lodged against the teacher in the 16 years prior to the acts giving rise to the action and for which he was convicted comprised a pattern of unconstitutional misconduct establishing that the Board had a custom of failing to receive, investigate and act upon such complaints. Plaintiffs further alleged the Board had a custom or policy of failing to train its school principals in investigating complaints of sexual abuse. In granting summary judgment for the Board, the district court specifically concluded that the teacher's misconduct, as alleged, may have been unconstitutional, but did not comprise a "continuing, widespread, persistent pattern" necessary to give rise to Board liability. The court also held that the Board did not have notice of the previous complaints and thus could not have exhibited the deliberate indifference or tacit authorization of the misconduct necessary to support a finding of liability under either a municipal custom or failure to train theory. 934 F.2d at 932.

Similarly, in Jane Doe "A", parents of handicapped students who were sexually abused by a school bus driver brought a § 1983 action against the school district alleging it had a custom of failing to adequately receive, investigate and act upon prior complaints of child abuse by the driver. In the three years prior to the incidents leading to the conviction of the driver, various school district employees had received complaints of abuse against the driver. In affirming the district court's dismissal of the plaintiffs' claims on a motion for summary judgment, the Eighth Circuit held that because no school district official received more than two complaints about the

17

bus driver, none of them had knowledge of a sufficient number of incidents to constitute notice of a pattern of unconstitutional behavior by the driver. In the absence of notice, the court stated it could not, as a matter of law, attribute to the school district deliberate indifference towards the underlying unconstitutional misconduct. 901 F.2d at 646. See also Doe v. Gooden, 214 F.3d 952, 956 (8th Cir. 2000) (holding that while defendant school superintendents had notice of certain specific physical abuse allegations against teacher, they did not have notice of a pattern of unconstitutional acts committed by him, as required to hold them liable under § 1983).

Because there is insufficient evidence to establish the existence of a widespread pattern of unconstitutional misconduct in the District, and no evidence that the District had notice of Hansen's or anyone else's misconduct, the Court will grant summary judgment on Count II in favor of the District and against Plaintiffs.

### 2. 42 U.S.C. § 1983 – Substantive due process - failure to supervise and train

Under § 1983, "a claim for failure to supervise requires the same analysis as a claim for failure to train." Atkinson, 709 F.3d at 1216. Neither claim can succeed without evidence the District "[r]eceived notice of a pattern of unconstitutional acts committed by [its employees]." Id. at 1216-17 (quoting Parrish v. Ball, 594 F.3d 993, 1002 (8th Cir. 2010)). Without some form of notice, the District cannot be deliberately indifferent to the risk that its failure to train or supervise in a relevant respect – here, with regard to showering activities at the Camp – would result in "a violation of a particular constitutional or statutory right." Id. at 1217 (quoting Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 411 (1997)); see also Jennings, 397 F.3d at 1122 (citing City of Canton, 489 U.S. at 389; Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996)).

When, as in this case, the underlying constitutional violation is a substantive due process claim[11], a remedy under § 1983 is recognized only when the behavior at issue "shocks the conscience." Shrum, 249 F.3d at 779. The District argues that Plaintiffs have not addressed the "shocks the conscience" standard in their briefing, thereby conceding it cannot be met. (Doc. No. 126 at 6) Because in some cases, deliberate indifference to an employee's unconstitutional conduct may satisfy this standard, the Court will consider whether the District's alleged failure to train or supervise was so deliberately indifferent to a "predictable constitutional violation that it shocks the conscience." Shrum, 249 F.3d at 779-80 (school district's actions in entering into a confidential settlement agreement with teacher rather than terminating him outright for molesting student, and providing him with a neutral letter of recommendation was not so deliberately indifferent that it rose to the level of shocking the conscience).

As noted above, notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability. See Brown, 520 U.S. at 409; Szabla, 486 F.3d at 392–93. Notice may be implied when (1) "the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious," or (2) "a pattern of misconduct indicates that the District's responses to a regularly recurring situation are insufficient to protect Plaintiffs' constitutional rights." Jennings, 397 F.3d at 112 (quoting P.H., 265 F.3d at 660). In addition to deliberate indifference, Plaintiffs must show a direct causal link between the failure to train or supervise and their ultimate injury; in other words, the municipal inaction must be the "moving force" behind the constitutional violation. Lincoln Cty., 874 F.3d at 585.

---

[11] The Due Process Clause of the Fourteenth Amendment protects the liberty interest (freedom of bodily integrity) of a child in public school from sexual abuse. P.H. v. School Dist. of Kansas City, Missouri, 265 F.3d 653, 658 (8th Cir. 2001); see also Rogers, 152 F.3d 790, 796-97.

19

Plaintiffs have presented no evidence indicating the District had reason to believe, before the events giving rise to this case, that its training or supervision around showering activities at the Camp was inadequate and likely to result in a constitutional violation. Clearly, the District recognized the need to address privacy concerns at District events and on District property in its official policy prohibiting the use of recording equipment on District property in areas where there is a reasonable expectation of privacy, such as restroom facilities or locker rooms, a policy which explicitly prohibited Hansen's conduct. Nevertheless, Hansen acted in direct contravention of the District's policies and the law and concealed his actions. The District first learned that Hansen was illegally video recording students when he was arrested in 2012 and District officials were contacted by police.

Plaintiffs are also unable to show a pattern of misconduct that would have put the District on notice that its supervision or training was insufficient and likely to result in a constitutional violation. Thelma D., 934 F.2d at 934-35. Plaintiffs present no evidence that the District was aware its procedures were inadequate because, as noted above, it had no notice of the on-going problem. Id. ("[T]he Board simply cannot be said to have acquiesced in something of which they had no knowledge . . ."). Without notice, Plaintiffs cannot show deliberate indifference, let alone deliberate indifference that shocks the conscience.

Because Plaintiffs have not presented sufficient evidence to support a § 1983 claim for failure to supervise and train, the Court will grant summary judgment on Counts III, V, and VII in favor of the District and against Plaintiffs.

## V. Conclusion

For all these reasons, the Court finds and concludes that municipal liability under § 1983 does not attach to the District. Plaintiffs fail to raise an issue of material fact as to whether the

District had notice of Hansen's actions, let alone a continuing, widespread, persistent pattern of unconstitutional misconduct generally. Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability. See Brown, 520 U.S. at 409; Szabla, 486 F.3d at 392–93. Absent notice, no reasonable jury could find the District liable for Hansen's misconduct under § 1983. The Court will, therefore, grant summary judgment for the District Defendants on Plaintiffs' § 1983 claims. In doing so the Court does not intend to minimize Hansen's misconduct or the impact that it had on some of the Plaintiffs. The facts of this case are serious and disturbing. Where the District has not directly inflicted an injury, however, "rigorous standards of culpability and causation must be applied," Brown, 520 U.S. at 405, and a showing of deliberate indifference is required. To hold the District responsible for Hansen's misconduct, Plaintiffs needed to establish the District was confronted with, at least, constructive notice of Hansen's actions and yet was deliberately indifferent to the harm he was causing; i.e., that it essentially ignored very clear unmistakable warning signs about Hansen's conduct and just looked the other way. Plaintiffs have failed to do this.

Accordingly,

**IT IS HEREBY ORDERED** that District Defendants' Motion for Summary Judgment [111] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion for Default Judgment and Statutory Damages Under Count I of the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment Under Count I of the Second Amended Complaint [114] is **DENIED**.

A separate judgment will accompany this Memorandum and Order.

Dated this 15th day of May, 2018.

John A. Ross

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**